## GORMAN, Admx., Plaintiff-Appellant v. COLUMBUS & SOUTHERN OHIO ELECTRIC COMPANY, Defendant-Appellee.

Ohio Appeals, Second District, Franklin County

No. 3704. Decided July 19th, 1944.

Max H. Gumble, Columbus, William B. Bartels, Columbus, for plaintiff-appellant.

Burr, Porter, Stanley & Treffinger, Columbus, for defendant-appellee.

### OPINION

By GEIGER, J.:

This matter is before this Court on appeal on questions of law from the judgment of the Court of Common Pleas.

The plaintiff below is the administratrix of the estate of Edward Gorman, and the defendant is a corporation engaged in the business of operating busses and street cars in the city of Columbus.

The petition recites the location of an accident in some detail, which is not necessary to here restate. It is alleged that on the 27th day of June, 1937, the decedent, Edward B.

Gorman, was standing on the sidewalk on the southeast corner of Long and High Streets waiting for a street car; that while he was standing there a street car, operated by the agents of the defendant in a northerly direction on High Street, attempted to turn east into Long Street, and that while in the act of turning, the trolley tip on said street car was thrown off and struck the defendant in the lower left groin, injuring him as set out.

It is alleged that the defendant was negligent in the operation of the street car in the following particulars:

(1) That said trolley and trolley tip were defective.

(2) That defendant negligently permitted said trolley tip to be thrown violently into and against the defendant.

It is alleged that such negligence was the proximate cause of the injury and death of the decedent. It is asserted that as a result of the decedent having been struck by said trolley tip he received a severe contusion of the groin, and that he suffered pain in the sacral region and at other points, suffering such pain until his death which occurred on the 10th day of May, 1940; that between the day of the injury and the day of his death he was unable to do any work, and that, as a direct and proximate result of the negligence, the decedent died.

It is asserted that the plaintiff is the widow of the said Edward Gorman; that at the time of his death he was fifty-five years of age and that prior to the injury he was regularly employed at the stated salary; that the plaintiff brings the action for the benefit of herself and son and says that they have suffered damages in the sum of $50,000.00.

The defendant answered, admitting many of the allegations of the petition, among others, that on June 27, 1937, at about 7:52 A. M. a street car headed north in High Street, turned east into Long Street and while said street car was so turning, the tip of the trolley fell off and into the street. For lack of information defendant denies that the said tip of the trolley struck the plaintiff's decedent or any one else, and the defendant denies all other allegations.

It appears that after the plaintiff had been injured the defendant secured his deposition as on cross-examination as an anticipated defense in a suit that he had brought against the defendant. Prior to the death of the decedent he compromised his suit and claim against the company, settling the same for the consideration agreed upon. After his death his widow brought the action as his administratrix for the benefit of herself and her son.

A controversy arose at an early stage as to whether or not the paintiff in the action by the administratrix was entitled to an inspection of the deposition of the decedent taken as upon cross-examination by the defendant. It was stoutly asserted by the defendant that the deposition was taken for its own protection to protect its defense, and that the plaintiff had no right to its inspection. The motion of the plaintiff in which her claim to an inspection is stated, is to the effect that the Court order defendant to permit plaintiff or her attorney an inspection and copy or permission to take a copy of the deposition of Edward B. Gorman taken upon cross-examination December 10, 1938, in the possession or under defendant's control, containing evidence relating to the merits of the action. The plaintiff exhibits the demand made upon the defendant for the inspection. Counsel for both sides argued at length before the court the preliminary question as to whether there was a right in the plaintiff to have such inspection. On this point the Court hearing this motion for inspection, upon consideration, finds that the statements of the motion are true and grants the motion, and it is ordered that the defendant give to plaintiff, or her agent or attorneys, instanter, an inspection or permission to take a copy of the deposition described, and upon its failure the plaintiff may by affidavit allege the facts contained in the deposition; whereupon the Court will instruct the jury on the law in reference thereto.

The motion was reargued and the Court again sustained the same.

The Court states that counsel for defendant had urged that the document was generated by him for his client for its defense if required. The Court also cites as sustaining his position the case of **State v Fox, 133 Oh St. 154,** a criminal case; also the case of Ward v. Eid Steel Company, 17 N. P. N. S., 331. The Court thereupon sustained the motion for inspection. This ruling was not by the trial court, but on the preliminary question as to the the right of inspection.

At the time of the trial of the cause of the administratrix plaintiff tendered the deposition of the deceased Edward B. Gorman and objection was made by the defendant, and the trial Court sustained the objection, and thereupon, there being no other evidence of the manner in which the accident happened, the Court instructed the jury to bring in a verdict for the defendant. A motion for a new trial was thereupon made, which was by the Court overruled.

The trial Court in passing upon the motion for the right of the plaintiff states that the plaintiff bases her motion upon the ground that the deposition contains evidence relating to the merits of the action, citing §11552 GC; that the defendant opposes the motion on the ground that the deposition is a document generated by the defendant for its own defense and is privileged. The Court recites the fact that the deposition was taken in a former case in which Gorman was plaintiff and the defendant was defendant; that Gorman claimed damages as the result of the injury sustained and his deposition was taken by the defendant as on cross-examination, and the case was later settled; that approximately three years after the accident Gorman died and the action is brought by the administratrix for damages for wrongful death. The Court cites the case of **Ex Parte Schoepf, 74 Oh St 1**, and **In re Klemann, 132 Oh St 187,** wherein the Supreme Court held that the documents in question constituted a communication between attorney and client and was privileged, under §11494, G. C.

The question here presented is very interesting and is well briefed by both sides; the question being whether the plaintiff administratrix, in bringing her action for the wrongful death of her husband, has a right to use as establishing her claim of alleged negligence, the deposition of the decedent taken on cross-examination at the instance of the defendant in a pending suit, but never filed in the case wherein the decedent, during his lifetime, brought an action against the defendant for the negligent acts complained of, which action was settled during decedent's lifetime.

There was no living witness available who could testify to the fact that the flying wheel struck the decedent as claimed by plaintiff, but denied by defendant. If the decedent's deposition is excluded it is claimed that the jury had no evidence on which to base a verdict in favor of the administratrix, and the Court had no choice, if the deposition was incompetent, than to instruct the jury to return a verdict for the defendant. The trial Court excluded the evidence and instructed a nonsuit.

The administratrix, plaintiff-appellant, asserts the following assignments of errors:

1. The Court erred in refusing to admit the evidence offered on behalf of the plaintiff, Exhibit "A", being the testimony of Edward B. Gorman taken upon cross-examination

by the defendant in the case of Edward B. Gorman as plaintiff against the Columbus and Southern Ohio Electric Company as defendant in case No. 153,675.

(2) The Court erred in refusing to admit in evidence the answers of Dr. Howard M. Brundage and Dr. John H. Richardson in response to hypothetical questions submitted to them.

(3) The Court erred in directing a verdict at the close of the evidence offered on behalf of the plaintiff in favor of the defendant.

(4) The Court erred in overruling the motion of plaintiff for a new trial.

It is apparent that whether the ruling of the court as complained of in assignments 2, 3 and 4 were erroneous depends upon the determination as to whether the Court erred in refusing to admit as evidence the deposition so taken by defendant on cross-examination.

It is interesting to examine the basis of the trial court's instruction to find in favor of the defendant as the same may be found in the bill of exceptions. On page 3, et seq., of the bill will be found the comment of the Court. Counsel for plaintiff offered in evidence as Plaintiff's Exhibit "A" what purports to be the testimony taken in a deposition of Edward B. Gorman on cross-examination. Counsel for defendant objected and the Court sustained the objection and inquired of counsel whether they wanted the Court's reasons. Counsel for defendant stated that so far as the defendant is concerned the reasons would make no difference, and counsel for plaintiff stated: "We are satisfied and save our exceptions. Thereupon the Court, desiring to state the reasons, said in substance, "I will not go into details but just briefly. The objection to the introduction of the paper writing marked Plaintiff's Exhibit "A" is sustained. The Court is of the opinion that the same is not authorized by §11496 G. C., because the paper writing does not purport to constitute evidence which was introduced in any former case. It never became evidence in that case. And, further, that said statute only authorizes the use of testimony in the particular case in which such testimony was taken.

"Neither is the introduction of proffered evidence authorized by §11540 GC, nor is it authorized by §11540-1 GC, for the reason, among others, that said purported testimony was not taken by the plaintiff. "Further, the attempt to intro-

duce it is in violation of §11544 which provides that every deposition intended to be read in evidence on the trial must be filed at least one day before the date of the trial. Such requirement would have been a necessary requirement for the use of the testimony in the former case and the court is of the opinion that in order for testimony to be competent on a subsequent case it must have been competent in a former case. The foundation must be laid in either case. The case is to be distinguished from the case of **Industrial Commission v Bartholome, 128 Oh St 13,** because in that case the transcript of the testimony taken did become a public record. * * * * And in this case we are confronted with the provision of §§11540-1 and 11544 and other sections relative to the taking and authentication of depositions."

On page 76 appears the colloquy between counsel and the Court in the discussion of the objection of counsel for defendant to the introduction of the opinion advanced by the physician which is substantially repeated as to a second physician. Counsel for defendant says:

"I object to the question, if the Court please, on the ground that the hypothetical question is not supported by the evidence."

"THE COURT: It is of course fundamental that each element embraced in the hypothetical question must have been supported by the proof. One of the elements embraced in this hypothetical question is as follows."

And then is recited a portion of the hypothetical question in relation to the proposed assumption that the man was struck in the inguinal region by a trolley wheel from the street car.

"As yet there is no testimony supporting or tending to prove that element of the hypothetical question. Therefore the objection is sustained."

The judge trying the case was not the same Judge who sustained the motion for an inspection of the deposition. The Judge sustaining the motion for inspection must have been

of the opinion that the deposition was competent; otherwise, he would have overruled the motion for an inspection. We thus have the situation presented that one Judge on the preliminary hearing involving the motion arrived at the conclusion that the deposition was competent, and the Judge sitting in the trial of the case arrived at the contrary conclusion to the effect that the deposition was not competent for the reasons above recited.

### DIRECTION OF THE COURT TO THE JURY TO FIND IN FAVOR OF THE DEFENDANT.

After the plaintiff had rested the defendant moved the Court to direct the jury to return a verdict in favor of the defendant for the reason that the plaintiff is not entitled to recover against defendant upon the pleadings and the evidence. Thereupon, after some further discussion, the trial court stated in reference to the motion for a directed verdict:

"This action is based upon a petition and one of the material allegations of the petition is that a street car operated by the agents of the defendant company in a northerly direction on High Street attempted to turn east into Long Street and while in the act of so turning, the trolley tip of said street car was thrown off and struck defendant in the lower left groin injuring him as complained."

"Upon this point there is no testimony in the record that a trolley tip of a street car struck the decedent in the lower left groin or struck him anywhere else or ever came in contact with him, and of course that is one link in the chain which is a necessary link and there must be a showing by some proof that he was struck by an agency of the Light Company."

"There is no evidence in the record to that effect and therefore the motion of necessity must be sustained. The jury will be so directed."

The first matter that impresses itself is whether or not the Court was right in determining that there was **no** evidence that the decedent was struck by the trolley wheel from defendant's car. The petition alleges that the decedent was standing on the sidewalk at a certain point at the intersection of Long and High Streets and that while he was so standing there, a street car operated by the defendant's agents in a northerly direction, attempted to turn east and that while in the act of turning the trolley tip on said street car was thrown off and

struck the decedent in the lower left groin, injuring him as set out.

To this the defendant answered admitting many of the allegations of the petition, among others that on June 27, 1937, at about 7:52 A. M. a street car headed north in High Street turned east into Long .Street and while said street car was so turning the tip of the trolley fell off into the street. For lack of information defendant denies that said tip of the trolley struck the plaintiff's decedent or any one else, and the defendant denies all other allegations.

The matter thus assumes the form of an allegation by the plaintiff that the decedent was struck .by a falling trolley wheel. The defendant admits that such a trolley wheel fell from a car making a turn at the time and at the point alleged in the plaintiff's petition. It, however, denies that said wheel struck the plaintiff's decedent or any one else.

Competent evidence was introduced to the effect that shortly after the time stated the decedent returned home and that his wife soon discovered black and blue marks on his groin and a swelling in that region which continued with great pain to the decedent, intermittently until the time of his. death. Under these conditions was there **no** evidence that the trolley wheel struck the decedent as alleged in the petition? The company admits that the wheel was thrown from the pole and fell to the street, but denies, for want of information, that it struck the decedent or any one else. And it is asserted and was so held by the Court that this absent link justified the Court in instructing the jury that there was **no** evidence.

Nothing was lacking to complete the chain except the testimony as to the impact of the wheel against the body of the decedent. There is abundant competent testimony that the decedent suffered an injury at the time in question, and we are not convinced that the admission of the defendant that the trolley wheel came off the pole and the proof of the subsequent physical condition of the decedent occurring immediately after the conceded time when the trolley wheel came off, does not furnish **some** evidence that the trolley wheel struck the decedent. Suppose the decedent had been immediately killed by something that struck him in a vulnerable spot and the defendant admitted that at that time and place a heavy article fell from the trolley pole. The decedent, having been immediately killed, could, of course, not testify, but the admission by the defendant that the trolley wheel fell, supplemented by testimony as to the immediate death of the decedent in

such a case would furnish enough evidence to go to the jury to enable it to determine whether in that case the decedent was struck by the falling trolley wheel.

Under the circumstances of the case at bar the Court might not be justified in instructing the jury to bring in a directed verdict. We recognize that this point is subject to critical examination, and we will not at present finally determine whether the Court erred in instructing a directed verdict, due to the fact that there was no evidence that the trolley wheel struck the decedent. We will pass upon this question later in the discussion.

### THE STATUTES.

It is necessary that we examine the various statutes in relation to the use of depositions taken under the conditions shown in the case at bar. We shall not discuss these statutes at great length and will delete such portions as may not be applicable and shall emphasize those we regard as particularly applicable to the case.

We turn first to the statutes mentioned by the trial court as a basis for the directed verdict. **Section 11540 GC** referred to by the Court as not authorizing the introduction of the deposition provides in substance: a deposition may be read in any stage of the action or proceeding or **in any other action or proceeding upon the same matter between the same parties. \* \***.

**Section 11540-1 GC**, under the heading, "May be read by administrator or executor in action for damages", it is provided that depositions taken by the plaintiff in an action for damages for personal injury may be read by the administrator of the estate in such action for personal injury against the same defendant or defendants in any action for damages or for wrongfully caused death resulting from the same personal injuries so far as such deposition may be relevant to the issue in question for damages wrongfully caused. We shall not proceed with the final examination of these statutes at this point.

The trial Court on page 4 of the bill holds that the introduction of the deposition is in violation of §11544 GC which provides that a deposition intended to be read in evidence on the trial must be filed at least one day before the day of the trial. However, it has been held that the objection that the deposition was not filed in time may be waved by proceeding to trial without filing exceptions. Straw v Dye, 2 Dec. Rep.

312, 2 W. L. M. 388. We do not recall that there was any objection made by the defendant at the time of the trial to the use of the deposition for the reason that it was not filed within one day before trial, the defendant confining its objection exclusively to the fact that the deposition could not be used in any event.

**Section 11525 GC,** under the heading, "When Deposition May be Used", provides in part that the deposition of a witness may be used only when it is made to appear * * * that he is dead.

**Section 11538 GC** provides, under the heading, "The Duty of the Person Taking the Deposition", that the deposition must be sealed and transmitted to the Clerk on the Court where it shall remain under the seal until opened by the Clerk by order of the Court or at the request of a party to the action or proceeding.

**Section 11496 GC** provides that when a party or witness, after testifying orally, dies, * * * if the evidence given by such party or witness is incorporated into a bill of exceptions **in the case wherein such evidence was given,** as being all the evidence given by such party or witness and such bill has been duly signed by the Judge, the evidence so incorporated in such bill of exceptions may be read in evidence by either party on a **further** trial of the case. If no bill of exceptions has been taken, but the evidence of such party has been taken down by an official stenographer, the evidence may be read in evidence by **either party** on the **further** trial of the case and shall be prima facie evidence that such deceased party so testified. **If such evidence has not been taken by such a stenographer it may be proved by witnesses who were present at the former trial having knowledge of such testimony.**

This §11496 GC seems to permit the use of the deposition when the witness dies, if the evidence given by such party is incorporated into a bill of exceptions, but that if no bill has been taken the evidence of the witness has been taken down by an official stenographer (the fact in this case) such evidence may be read by **either party** on the further trial of the case, and in the event it was not taken by such stenographer it may be proved by witnesses who were present at the former trial having knowledge of such testimony. As to the present case, the decedent's deposition, he died, and his testimony was not incorporated in the bill of exceptions, for the reason that there was no trial of the case as the same was compromised. In that event, the statute provides that in the event

that it was taken by an official stenographer, (which was the fact in this case), the evidence may be read by **either** party on further trial of the case, and in the event it was not taken by an official stenographer it may be proved by those who heard the testimony. The very important provisions of this statute are that the depositions may be read "on the further trial of the case". The statute uses the expression as to those who may testify as being witnesses who were present at the former trial. A very fine distinction may be drawn as to what is meant by the term "on the **further** trial of the case". Does the "further trial" mean a second trial or the rehearing of the case or does it mean a further investigation of the cause of action? It is true that where witnesses are permitted to testify they are only those who were present at the **former** trial. We do not further pursue this matter at this time.

Certain sections of the statute relate to the right of the administratrix to bring an action after the death of the decedent. **Section 10509-166 GC**, provides in part that when the death of a person is caused by wrongful act, neglect or default such as would have entitled the party injured to maintain an action if death had not ensued, the corporation which * * would have been liable if death had not ensued * * shall be liable to an action for damages notwithstanding the death of the person injured.

**Section 10509-167 GC** provides that an action for wrongful death must be brought in the name of the personal representative of the deceased but shall be for the exclusive benefit of the surviving spouse, children and other next of kin of the decedent.

### PERTINENT DECISIONS IN THE OHIO COURTS.

In reference to the right to bring an action for wrongful death by the administratrix the Supreme Court has held that §10509-166 GC created a new and independent **cause of action** in the next of kin entirely apart from the cause of action which the decedent had during his lifetime.

In **Mahoning R. R. Co. v. Alstine, 77 Oh St 395**, the decedent, then in life, brought suit against the Railroad Company for personal injury and upon her death the administrator revived the action and obtained final judgment against the defendant company, which was paid. Thereafter an action was brought for the wrongful death and the defendant raised the defense of res judicati. The Court held that the judgment in the survival suit did not bar the administrator from recovery

for the benefit of the next of kin. The Court after examining numerous decisions concludes that the wrongful death action is a separate and independent action between different parties and holds that the judgment recovered by the administrator in the survival action does not bar the second action. The Court remarks that the revived action and the latter action are not the same but rest primarily upon the same alleged negligence.

In **May Coal Company v Robinette, Admr., 120 Oh St 110,** the Court holds that,

"Sections 10770 and 10772 GC, give an independent right of action for the benefit of the persons named in §10772 GC, where death has resulted from injuries, to recover for such pecuniary injury resulting from such death."

The Court, after having acknowledged that there was a conflict of authority, states:

"A study of the reported cases to be found in the notes in 8 LRA (NS), 384, 14 LRA (NS), 893, 51 LRA (NS) 711, and LRA 1915 E. 1102, et seq., discloses considerable conflict in the decisions, depending in part upon varying statutory provisions."

Our Courts are committed to the doctrine that the action for wrongful death is an independent action between different parties.

Currier v. Toledo, 30 OCA 430;

"By virtue of the provisions of §11538 GC, the officer before whom a deposition is taken must transmit the same to the clerk of court, and the deposition becomes when taken, whether filed or not, an official document under control of the court and may be used by either party according to its competency or relevancy."

**Ex parte Thayer, 114 Oh. St. 194:**

"A completed deposition which has been signed by the party whose testimony it embodies is a public record in the case in which such deposition was taken and the court may order the notary taking the deposition to endorse, seal and address

and transmit it to the clerk of the court where the action was filed, notwithstanding such action has been dismissed."

This case centers around the question as to whether the notary so taking the deposition can be compelled to file the same, and the court concludes:

"We make no holding upon the competency and relevancy of the deposition when it is introduced in evidence upon the trial of the pending action."

This decision is by Allen, J., and is worthy of close reading.

The case most relied upon by the appellants is that of **Industrial Commission v. Bartholome, 128 Oh. St., 13,** in which it is held that a transcript of the claimant's testimony on file with the Commission as to the nature of his injuries, which testimony was given under oath before the Commission after the denial of the Workmen's Compensation for an alleged injury in which proceeding the Commission by its counsel cross-examined the claimant, is admissible upon the trial of an appeal from the denial of death award to his dependents, for all purposes for which transcript was available to the plaintiff.

"2.  Under §1465-40 GC, such transcript of testimony is a public record which must be preserved, and a proceeding to perpetuate such testimony is superfluous and unnecessary."

The opinion in this case is by Judge Stephenson, and while it elaborates the point that in Industrial Commission cases liberality should be shown to permit the establishment of the claim, yet the whole tendency of the reasoning is to the effect that depositions taken with the right to the opposite party to cross-examine are to be rather freely used.  The Court quotes with approval the case of Walkerton v Erdman, Exrx., 23 Canada Supreme Court Reports, 352, where the disclosed facts are:  Erdman fell into an excavation in one of the streets of Walkerton and sued for damages.  His physical condition became bad.  His deposition was taken upon notice and the town was present by counsel and cross-examined Erdman. Erdman subsequently died.  The widow, executrix under his will, brought suit against the same parties under the Campbell Act for damages for wrongful death.  At the trial the deposition of Erdman taken in his case was offered in the wrongful death

case, was rejected and the executrix was nonsuited. The nonsuit was set aside by the Division Court and such judgment was affirmed by the unanimous judgment of the Court of Appeals, which judgment was affirmed by the Supreme Court of Canada by a divided court, three affirming and two dissenting. It is stated that Justice King predicates his opinion on Taylor on Evidence, Sec. 464:

"Where a witness has given his testimony under oath in a judicial proceeding, in which the adverse litigant had the power to cross-examine, the testimony so given will, if the witness cannot be called, be admitted by any subsequent suit between the same parties, or those claiming under them, provided it relate to the same subject or substantially involves the same material questions."

Stephen on Evidence, Article 32, is quoted to the effect,

"Evidence given by a witness in a previous action is relevant for the purpose of proving the matter stated **in a subsequent proceeding** when the witness is dead."

The Supreme Court further states:

"But while the present cause of action is new and different from that brought in his lifetime by Erdman it is nowhere stated that the causes of action are to be identical in order to render admissible in a later action evidence given in an earlier one."

The Supreme Court of Ohio concludes:

"The case before us is really stronger than the Canadian case. The same statute that gave Bartholome the right to compensation had he lived gives it to his widow in case of his death. She is compensated for the death from the particular injury while he would have been compensated for the particular injury."

This case is too long and complicated to quote further from it.

The case of **Lord v. Boschert, 47 Oh Ap 54**, states the opposite of the proposition as follows:

"Deceased witness' testimony in wife's personal injury action held inadmissible in husband's subsequent action for loss of consortium; husband's action not being 'further trial of case' within statute."

This was decided by the Court of Appeals of Hamilton County on January 22, 1934. We will not attempt to analyze it, but we will say that should we decide that the deposition is competent we would probably be willing to certify a conflict to the Supreme Court.

## TEXT BOOKS.

Much may be found upon the question not in harmony from the various textbooks. See Amer. Jur. 16, pp. 751, 752, in substance:

"While the requirements as to the identity of the subject matter and parties have been narrowly construed by some courts, the rule supported by the weight of authority is that a mere technical dissimilarity of parties and causes of action will not render a deposition inadmissible in a subsequent action. The law, it is said, does not look to an exact and technical identity of parties and causes of action, but rather to the identity of the question under investigation and to the opportunity for cross-examination by the party against whom the deposition is offered."

142 LRA, 696, under the heading, "Opportunity for cross-examination on identical issue, rather than identity of parties as determining admissibility":

"In view of the close relationship between the requirement of necessity of opportunity for cross-examination and the rule requiring identity of parties, * * there is a tendency, advocated by Wigmore and supported by a number of decisions, to subordinate the latter rule to the former and make the test of admissibility the presence of an adequate opportunity for cross-examination on the identical issue."

Wigmore is quoted substantially as follows:
It is commonly said that to permit the record of former testimony in evidence, the parties to the litigation in which the

testimony was first given must have been the same as in the litigation in which it is now offered. But this limitation suffers in practice many modifications; and properly so, for it is not a strict and necessary deduction from the principle. * * * It is entirely settled that in some such cases he must be satisfied, namely in cases where the other person was a privy in interest with the parent. The reason for such cases is that there the interest to sift the testimony thoroughly was the same for the other person as for the present person. The principle, then, is that where the interest of the person was calculated to induce equally as thorough a testing by cross-examination, then the present opponent has had adequate protection for the same end. Thus, the requirement of identity of parties is after all only an incident or corollary of the requirement as to the identity of the issue.

Wigmore continues:

"It ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party-opponent in that case had the same motive in his cross-examination that he present opponent has."

In Wade v King, 19 Ill., 301, the Court said that it is not material that the parties to the latter suit be identical, or that there be complete mutuality in respect to their relation to each other or to the subject matter before depositions taken in a former suit are admissible in evidence, it being sufficient if the same matters were in issue in both cases.

142 ALR 694:

"Thus, even in the decisions supporting the general rule that there must be substantial identity between the parties (or their privies) to the first proceeding and those in the latter action, in order to render the testimony or the deposition of a witness now unavailable admissible in the latter action, it is brought out again and again that the fundamental reason for such requirement is the necessity that there has been full opportunity to cross-examine."

The facts in the instant case are peculiar in this that the decedent brought an action against the railroad company, which on its own motion took, as on cross-examination, his evidence. It asserts that it took the evidence so as to build up a defense in anticipation of a suit by the injured party. Such suit after being brought was compromised and the man died and his widow now brings the statutory action to collect

damages on account of his death which are to be for her benefit and the benefit of his children. It is manifest that the issues are the same. It also must be conceded that full opportunity for cross-examination was given to the defendant because it instituted the cross-examination and kept within its control after the same had been transcribed by the notary, the testimony so taken. If it be true, as seemingly stated on good authority, that the essential requirement is an opportunity for cross-examination on substantially the same issues and substantial identity of the parties, then we have only to solve the question as to whether the evidence to be adduced on behalf of the present plaintiff is substantially that pertinent to the former case and whether or not the executrix representing the widow is substantially the same party as the original plaintiff.

As we look at the matter there runs through all the statutes in relation to taking of depositions a similarly fixed purpose to regard them as court papers which are to be used in further trial of the same issues wherever the same are pertinent and that there is no disposition to limit their use technically to identity of parties. The main proposition is that evidence has been secured, available to determine the issues in a similar case where there is **substantial** identity.

We therefore are of the opinion, without further discussion of this matter which is already too long, that the Court should have permitted the introduction of the deposition taken on cross-examination during the lifetime of the decedent and the testimony of the physicians, for the consideration of the jury during the case of the executrix, and that the exclusion of this testimony was prejudicial error.

We have also arrived at the conclusion that even if this evidence was not properly admissible, yet there was evidence, as we have heretofore pointed out, that should have been submitted to the jury as to whether the decedent was injured by the fall of the trolley wheel. It is quite clear that different minds may have arrived at different conclusions as to whether the falling wheel struck the man and injured him as claimed.

Of course the evidence submitted does not decide the ultimate question as to whether the man died as a result of being accidentally struck by the trolley wheel, or from an illness not caused or accelerated by such injury.

Judgment reversed. Cause remanded.

HORNBECK, J., concurs in judgment because of admissibility of deposition.

BARNES, P. J., dissents.